

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, | ) |
|     Plaintiff/Respondent, | ) ) ) Case No. 08-cr-777-3 |
| v. | ) ) Judge John W. Darrah |
| JULIO ALFONSO DIAZ-PALMERIN, | ) ) |
|     Defendant/Petitioner. | ) |

## **MEMORANDUM OPINION AND ORDER**

On January 15, 2009, Defendant/Petitioner Julio Alfonso Diaz-Palmerin was indicted on one count of conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846; one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); and one count of use of a communication facility in committing a narcotics offense, in violation of 21 U.S.C. § 843(b). On December 16, 2009, Diaz-Palmerin pleaded guilty to the § 843(b) count. He was sentenced to three years' probation on March 3, 2010; and the remaining counts against him were dismissed. He did not appeal his sentence or conviction.

On September 3, 2010, Diaz-Palmerin reported to the Department of Homeland Security as a condition of his probation. The government then commenced removal proceedings against him.

On December 20, 2010, Diaz-Palmerin filed a Petition for Writ of *Coram Nobis*. He filed an amended petition the following day to include supporting affidavits. Diaz-Palmerin asserts that neither his defense counsel nor the district court informed him

of any possible adverse immigration consequences associated with his guilty plea and that, had he known of such consequences, he would have rejected his plea agreement. Diaz-Palmerin therefore moves to vacate the judgment against him.

## LEGAL STANDARD

Pursuant to the All Writs Act, a district court may grant a writ of error *coram nobis* upon application by a petitioning party. *See* 28 U.S.C. § 1651; *United States v. Morgan*, 346 U.S. 502, 505 (1954) (*Morgan*). "A writ of error coram nobis affords the same general relief as a writ of habeas corpus"; but unlike a writ of *habeas corpus*, it is available to a criminal defendant who is not in custody. *Howard v. United States*, 962 F.2d 651, 653 (7th Cir. 1992). It is an extraordinary remedy that should only be allowed "under compelling circumstances." *Id.* A petitioner must show that he "is under a substantial legal disability" in order to obtain the writ. *Id.*

## ANALYSIS

Diaz-Palmerin seeks to vacate his conviction on the grounds that his counsel was ineffective for not advising him that a guilty plea could result in deportation. He relies on the Supreme Court's recent decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (Mar. 31, 2010) (*Padilla*). *Padilla* presented a case similar to the one at hand. The petitioner was a lawful permanent resident of the United States who was facing deportation after pleading guilty to a drug-trafficking offense. *Id.* at 1477. The petitioner sought postconviction relief in state court, claiming that his counsel failed to advise him of any immigration-related consequences prior to his plea and that counsel affirmatively misrepresented that his immigration status would not pose a problem. *Id.* at 1478. The

2

Supreme Court of Kentucky denied his postconviction relief without a hearing, holding that the Sixth Amendment's guarantee of effective assistance of counsel does not protect a criminal defendant from erroneous advice about "collateral" consequences of a conviction. *Id.* The Supreme Court of the United States granted *certiorari*; concluded that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel," *id.* at 1482; and ultimately held that, in order to provide constitutionally effective assistance to a client, "counsel must inform her client whether his plea carries a risk of deportation," *id.* at 1486.

The *Padilla* Court's decision was expressly based on *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (*Strickland*), which provides a two-part test for claims involving ineffective assistance of counsel. *See Padilla*, 130 S. Ct. at 1482. First, the petitioner must establish that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The *Padilla* Court held that the petitioner had sufficiently alleged that his counsel's performance was constitutionally deficient. *Padilla*, 130 S. Ct. at 1483. The Court did not reach the second part of the *Strickland* test (whether the deficient performance was prejudicial); rather, the case was remanded to the Supreme Court of Kentucky for further proceedings. *Id.* at 1483-84.

The Government argues that *Padilla* does not apply to the instant case for two reasons. First, it argues that *Padilla*, which was decided *after* Diaz-Palmerin's conviction

3

became final, should not be applied retroactively. Second, it argues that even if *Padilla* applies to collateral challenges brought by a defendant who is currently in custody, the relief it provides is not available through a petition for a writ of *coram nobis* to a defendant who is not in custody.

In *Teague v. Lane*, 489 U.S. 288, 309 (1989) (*Teague*), the Supreme Court held that a new constitutional rule decided by the Supreme Court after a defendant's conviction has become final may not be the basis for vacating that conviction in a postconviction collateral proceeding unless it falls within one of two limited exceptions. The first exception is for new rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* at 311 (quoting *Mackey v. United States*, 401 U.S. 667, 692 (1971)). The second exception is for "watershed rules of criminal procedure." *Id.* at 311. This latter exception "is extremely narrow," *Schiro v. Summelin*, 542 U.S. 348, 352 (2004); the rule at issue must implicate fundamental fairness and the accuracy of the conviction, *Bintz v. Bertrand*, 403 F.3d 859, 867 (7th Cir. 2005).

Thus, the threshold inquiry is whether *Padilla* announced a new rule. A "new rule" is one that "breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 389 U.S. at 301. "Under the *Teague* framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007). If the rule announced in *Padilla* is not a new one, it should be applied to

4

Diaz-Palmerin's claim. If it is new, Diaz-Palmerin must establish an exception to the general principle that such rules do not apply on collateral review.

In another case involving a set of facts that is very similar to the one at hand, another judge in this district concluded that the rule set forth in *Padilla* was not new. *See United States v. Chaidez*, 730 F. Supp. 2d 896 (N.D. Ill. 2010) (Gottschall, J.) (*Chaidez*).[1] Judge Gottschall determined that, rather than setting forth a new rule of criminal procedure, *Padilla* merely applied *Strickland* to a new set of facts. *Id.* at 902. She cited two reasons for coming to this conclusion. First, because both the petitioner in *Chaidez* and the petitioner in *Padilla* brought a collateral challenge to a conviction, any reason for barring Chaidez's petition under *Teague* would have applied to Padilla as well. *Id.* at 902-03. Not only was Padilla's claim allowed to proceed on remand, none of the three opinions written in *Padilla* even mentioned *Teague* or any issue of retroactive application. *Id.* at 903. Additionally, the *Padilla* Court acknowledged that its decision would be applied to prior convictions when it sought to specifically dispel concerns about opening up the floodgates to new challenges of prior guilty pleas:

> It seems unlikely that our decision today will have significant effect on those *convictions already obtained* as the result of plea bargains. For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea.

*Id.* (quoting *Padilla*, 130 S. Ct. at 1485 (emphasis added by *Chaidez*)).

Judge Gottschall's second reason for concluding that *Padilla* merely applied an existing rule to a new set of facts was that "application of *Padilla* in cases like this one

---

[1] *Chaidez* is currently on appeal in the Seventh Circuit. *See Chaidez v. United States*, No. 10-3623.

5

continues to promote the finality of judgments, which is the purpose behind the rule in *Teague*, while balancing the need to provide meaningful review of constitutional errors resulting in uninformed guilty pleas." *Id.* (citing *Gilmore v. Taylor*, 508 U.S. 333, 351 (1993) (O'Connor, J., concurring)). When considering a postconviction claim for ineffective assistance of counsel under *Strickland*, a court must consider the professional standards that existed at the time of the conviction. *Conner v. McBride*, 375 F.3d 643, 656 (7th Cir. 2004). Judge Gottschall found it "[c]ritical" to the *Padilla* Court's decision that professional standards had long required criminal attorneys to inform clients of immigration consequences. *Id.*

On the other hand, the Government argues that *Padilla* did, in fact, set forth a new rule of criminal procedure. According to the Government, "In determining whether a Supreme Court decision announces a new rule, the question is not whether the rule is governed by prior precedent, but whether 'no reasonable jurist . . . could have reached a conclusion different from the one' the Court adopted." Gov't Resp. Br. 5 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 532 (1997) (*Lambrix*)). The Government then asserts that the existence of three separate opinions in *Padilla* cuts against any argument that all reasonable jurists must come to the same conclusion reached by the majority.[2]

Although the presence of the Supreme Court's diverging viewpoints lends support to the Government's argument that this is not a case where no reasonable jurist could

---

[2] Justice Alito filed a concurring opinion in which Chief Justice Roberts joined. Justice Alito concurred in the judgment because of the fact that Padilla's counsel affirmatively misled him about the potential immigration consequences, but he disagreed with the majority opinion that a criminal defense attorney must affirmatively explain those potential consequences to her client. *See Padilla*, 130 S. Ct. at 1487. Justice Scalia filed a dissenting opinion joined by Justice Thomas. *See id.* at 1494.

have reached a different conclusion than the one announced, the Supreme Court has explained that "[e]ven though [it has] characterized the new rule inquiry as whether 'reasonable jurists' could disagree as to whether a result is dictated by precedent, the standard for determining when a case establishes a new rule is 'objective,' and the mere existence of conflicting authority does not necessarily mean a rule is new." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Moreover, the *Lambrix* decision on which the Government relies specifically notes that the case announcing the rule at issue "did not purport to rely on any controlling precedent." *Lambrix*, 520 U.S. at 528. As discussed above, *Padilla* expressly applied the controlling rule set forth in *Strickland* to the facts before the Court.

Ultimately, the reasoning set forth in *Chaidez* is persuasive. *Padilla* did not set forth a new rule of constitutional law. Instead, the Supreme Court held that the petitioner's counsel's performance "fell below an objective standard of reasonableness" as measured by "prevailing professional norms" as they existed at the time of Padilla's conviction. *Padilla*, 130 S. Ct. at 1482. Other courts have considered the issue and reached the same conclusion. *See Martin v. United States*, No. 09-1387, 2010 WL 3463949, at *4-5 (C.D. Ill. Aug. 25, 2010) (holding that *Padilla* applies and ordering evidentiary hearing on § 2255 petition); *United States v. Zhong Lin*, No. 3:07-CR-44-H, 2011 WL 197206, at *2-3 (W.D. Ky. Jan. 20, 2011) (concluding that *Padilla* did not create a new rule and granting writ of *coram nobis* to withdraw guilty plea); *United States v. Hubenig*, No. 6:03-mj-040, 2010 WL 2650625, at *8 (E.D. Cal. July 1, 2010) (same); *cf. also United States v. Shafeek*, Crim. Case No. 05-81129,

Civ. Case No. 10-12670, 2010 WL 3789747, at *3 (E.D. Mich. Sept. 22, 2010) ("Because the *Padilla* opinion may not be considered a 'new rule,' [petitioner] cannot show that the *Padilla* opinion should be applied retroactively" for statute-of-limitations purposes).

Because *Padilla* did not announce a new constitutional rule, there is no need to consider any issue of retroactive application under the exceptions set forth in *Teague*. Diaz-Palmerin is simply citing postconviction support for a preconviction right. *Padilla* is appropriately considered in resolving a collateral attack on a conviction imposed before that case was decided.

The Government next argues that, "[e]ven if *Padilla* is applicable to collateral challenges under § 2255, or other writs in which the defendant is still in custody, *Padilla* is still not applicable to petitions for a writ of *coram nobis*." Gov't Resp. Br. 9. The Government offers little support for this argument, other than to note that the writ is intended for "errors of the most fundamental character" and to baldly assert that a failure to advise a criminal defendant of immigration consequences is not a fundamental error. *Id.* (quoting *Morgan*, 346 U.S. at 512).

Notably, *Morgan*, the case relied upon by the Government, held that remand for proceedings on a writ of *coram nobis* was appropriate because it could not be determined from the record whether the defendant intelligently waived his right to counsel, an alleged error "of fundamental character." *Morgan*, 346 U.S. at 504-05, 512-13. Indeed, it is difficult to imagine a more fundamental right than the right to effective assistance of counsel. The Supreme Court "has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland*,

466 U.S. at 685-86 (citing *Powell v. Alabama*, 287 U.S. 45 (1932); *Johnson v. Zerbst*, 304 U.S. 458 (1938); *Gideon v. Wainright*, 372 U.S. 335 (1963)). And "the right to counsel is the right to *effective* assistance of counsel." *Strickland*, 466 U.S. at 685-86 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)) (emphasis added).

Thus, neither of the Government's objections to Diaz-Palmerin's petition is persuasive. If Diaz-Palmerin's allegations are true – that is, if he was not advised that a guilty plea carried a risk of deportation and that the lack of that advice changed the likely outcome of his criminal proceedings – Diaz-Palmerin states a valid basis for relief.

Diaz-Palmerin submitted three affidavits in connection with his petition. The first is his own. He states under oath that he has never possessed or trafficked in any type of drug in his lifetime; that he was not advised that his guilty plea carried immigration consequences; and that had he been informed of those consequences, he would have rejected the plea. *See* Ex. 1 to Am. Pet. The second affidavit is from Diaz-Palmerin's daughter. She states that she was present when her father pleaded guilty and when he was sentenced and that her father was not advised of any immigration consequences. *See* Ex. 2 to Am. Pet. The third affidavit is from Diaz-Palmerin's criminal defense counsel, Baltazar Mendoza. He states that he does not recall whether he fully informed Diaz-Palmerin of any immigration consequences. *See* Ex. 3 to A. Pet.

These affidavits are not sufficient to show that Diaz-Palmerin's sentence should be vacated. His daughter's affidavit does not set forth facts to demonstrate that she would have personal knowledge as to all of Diaz-Palmerin's conversations with his attorney, and Mendoza's affidavit is not notarized and merely provides that Mendoza

9

does not recall the advice he provided to his client. Moreover, Diaz-Palmerin's self-serving statement that he would have rejected the plea agreement does not suffice to establish that the result of the proceedings would have been different if Diaz-Palmerin were aware of the potential immigration consequences.

However, Diaz-Palmerin has set forth sufficient facts to demonstrate that he is entitled to an evidentiary hearing to determine whether his counsel's performance was ineffective within the meaning of *Strickland*.

## CONCLUSION

For the reasons stated above, Diaz-Palmerin's Petition for a Writ of *Coram Nobis* is taken under advisement. Diaz-Palmerin is entitled to a hearing on his claim of ineffective assistance of counsel.

Date: April 5, 2011

JOHN W. DARRAH
United States District Court Judge